UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JONATHAN FLORES-SNYDER,                    **FIRST AMENDED COMPLAINT**

                                                                   **16 cv 2839 (LTS)**
                                                                   **ECF Case**

            Plaintiff,
    vs.

The CITY OF NEW YORK, POLICE OFFICERS
DENNIS FREY and VINCENT DIMA,
in their individual and official capacities,         **JURY TRIAL DEMANDED**

           Defendants.
------------------------------------------------------------x

Plaintiff Jonathan Flores-Snyder, by his attorney, Cyrus Joubin, complaining of the

Defendants, respectfully alleges as follows:

## PRELIMINARY STATEMENT

    1.  This civil rights action arises from the unlawful search and seizure of Jonathan Flores-Snyder ("Plaintiff"), who was driving his mother's car in his neighborhood in upper Manhattan when NYPD officers pulled him over, detained him, searched his person and his vehicle, and violently handcuffed him.  Plaintiff asserts constitutional claims pursuant to 42 U.S.C. § 1983 ("Section 1983") against the individual defendants for illegal search and seizure, failure to intervene, excessive force, and a *Monell* claim against the City of New York for the same constitutional violations.  Plaintiff seeks compensatory and punitive damages, costs, disbursements, and attorney's fees pursuant to applicable state and federal civil rights law.

## JURISDICTION

    2.  This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and

the Fourth Amendment to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 (a)(3) and (4), this being an action seeking redress for the violation of Plaintiff's constitutional and civil rights.

## VENUE

3. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because the acts complained of occurred in this district.

## JURY DEMAND

4. Plaintiff respectfully demands a trial by jury on each and every one of his claims as pled herein, pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

5. Plaintiff Jonathan Flores-Snyder is a United States citizen and a resident of Manhattan.

6. The individually named defendants Police Officer Dennis Frey (Shield # 7600) ("PO Frey") and Police Officer Vincent Dima (Shield # 1682) ("PO Dima") (collectively, the "individual defendants") are and were at all times relevant herein officers, employees and agents of the New York City Police Department ("NYPD").

7. On the date of the incident giving rise to this complaint, the individual defendants were assigned to the 34th Precinct.

8. Each individual defendant is sued in his individual and official capacity. At all times mentioned herein, each individual defendant acted under the color of

state law, in the capacity of an officer, employee, and agent of defendant City of New York ("Defendant City").

9. Defendant City is a municipality created and authorized under the laws of New York State. It is authorized by law to maintain, direct, and to supervise the NYPD, which acts as its law enforcement agent and for which it is ultimately responsible.

## STATEMENT OF FACTS

10. On January 14, 2015, Plaintiff helped his mother move some of her belongings from their apartment in Upper Manhattan (Hudson Heights) to her brother's house in New Jersey.

11. Because there were many boxes, Plaintiff asked two childhood friends, Rob Lantigua ("Mr. Lantigua") and Jeremy Hamilton ("Mr. Hamilton"), to help him move and unpack the boxes.

12. Around 4 PM, accompanied by his two friends, Plaintiff drove his truck, full of boxes, to his uncle's home in New Jersey.

13. Plaintiff and his friends unloaded the boxes and emptied their contents – summer clothes, flip-flips, shorts, his mother's academic papers (she is a professor) – into storage bins and closets inside his uncle's spacious house.

14. Because Plaintiff's uncle wanted the boxes flattened for collection by the recycling company, Plaintiff used a foldable pocket knife (the "Knife") to open and flatten the boxes.

15. The Knife had a black handle and a blade about two inches long.

16. The Knife had personal significance to Plaintiff as it was a gift from a close family friend, who gave it to Plaintiff during a hike with Plaintiff's father when Plaintiff was seven-years-old. Plaintiff used the Pocket Knife throughout his childhood to carve sticks and make crafts.

17. After moving and unloading all the boxes, which took around 40 minutes, Plaintiff and his two friends drove back to New York City in his mother's car, an Audi sedan (the "Audi").

18. Plaintiff did the driving, while Mr. Lantigua sat in the front passenger seat and Mr. Hamilton sat in the back.

19. At around 6:30 PM, before parking the Audi in his neighborhood, Plaintiff stopped in front of a deli at 1408 St. Nicholas Avenue (between 180 and 181 Street) in order to quickly purchase a beverage.

20. Plaintiff turned on his hazard lights, went in the deli, bought a Naked carrot-orange juice, and went back into the Audi and continued to drive north up St. Nicholas Avenue.

21. The individual defendants – PO Frey and PO Dima – were inside their parked and unmarked police car facing south at the northwest corner of St. Nicholas Avenue and 180th Street when they observed Plaintiff get into the Audi and drive up St. Nicholas Avenue.

22. The individual defendants baselessly assumed that Plaintiff and his friends were somehow involved in crime, as if all young men in German cars in this part of town must be criminals.

23. After seeing Plaintiff driving north, the individual defendants performed a U-turn, and pursued and tailgated the Audi.

24. Stopped behind the red light at St. Nicholas Avenue and 181 Street, Plaintiff noticed the unmarked police car closely following him.

25. Plaintiff turned right onto 183 Street, the police cruiser turned right as well, and Plaintiff noticed the red and blue lights of the cruiser suddenly flashing.

26. Plaintiff immediately pulled over and stopped the Audi.

27. Plaintiff had been obeying all traffic rules and had done nothing to arouse police suspicion.  There was no unlawful or dangerous activity whatsoever involving the Audi.

28. After stopping the Audi, the individual defendants exited their car and approached the Audi.

29. The individual defendants – who wore plain clothes and winter hats – asked what the men were doing, and Plaintiff explained they had just come from New Jersey and were driving back home (Plaintiff and his friends lived in the same neighborhood).

30. The individual defendants demanded the identifications of Plaintiff and his friends.

31. Plaintiff and his friends complied with the order as they all handed their IDs to the individual defendants.  Plaintiff gave his valid New York State driver's license.

32. Plaintiff asked why the Audi was stopped, but the individual defendants ignored Plaintiff's question and did not answer.

33. The individual defendants began questioning Plaintiff and his friends about drugs, money, and guns.

34. Plaintiff and his friends denied any knowledge of or connection to such things, explaining that they were coming from New Jersey where they were helping Plaintiff's mother move some boxes.

35. While PO Dima went back to the police car to run the IDs for warrants, PO Frey remained at the Audi.

36. There were no warrants for Plaintiff or his friends.

37. When PO Dima returned to the Audi, the individual defendants ordered Plaintiff's friends to "step out of the car."

38. When Mr. Lantigua and Mr. Hamilton got out of the Audi, the individual defendants searched them and found nothing unlawful on their persons.

39. The individual defendants also searched the backseat of the Audi, finding nothing unlawful.

40. The individual defendants then commanded Plaintiff to get out of the Audi, and Plaintiff complied with this command.

41. When Plaintiff got out of the Audi, the individual defendants frisked and patted him down, and found the Knife in his rear pants pocket, saying "this knife is illegal."

42. The officers seized the Knife and arrested Plaintiff, handcuffing him behind his back, squeezing the handcuffs so tight they ripped into the flesh on Plaintiff's wrists.

43. Plaintiff explained that he was using the Knife to open boxes in New Jersey, and his friends confirmed his story.

44. Plaintiff complained about the tightness of the handcuffs, but the individual defendants admonished him to "shut the fuck up" and ignored his complaints.

45. The individual defendants grabbed Plaintiff, pushed him toward the police car, and kicked him as they shoved him inside, with his neck hitting the top of the police car.

46. As Plaintiff sat detained in the police car, he could see the individual defendants searching the interior of the Audi.

47. The Audi's rear seats fold down, allowing a view of the trunk, so the individual defendants may have also searched the trunk from the back seats of the Audi.

48. Afterwards, the individual defendants gave the keys of the Audi to Plaintiff's friends and told them to drive off, despite knowing they did not have driver's licenses.

49. The individual defendants then drove Plaintiff to the 34th Precinct (the "Precinct").

50. During the ride to the Precinct, the individual defendants continued questioning Plaintiff – "where's the drugs at? where's the coke?" and asking about weapons and a "pack of money," about which Plaintiff knew nothing.

51. The individual defendants berated Plaintiff to "stop hanging out with these people," which Plaintiff could not understand because Mr. Hamilton and Mr. Lantigua are good, hard-working people.

52. "What are you talking about?" Plaintiff replied. "I'm a stone mason – Rob works in a pharmacy – Jeremy sets up movie sets."

53. Plaintiff's innocent explanations fell on the deaf ears of the individual defendants, who wanted to mine Plaintiff for useful information about crime, foolishly thinking Plaintiff had such information.

54. When Plaintiff again asked why the officers had stopped him, the individual defendants fabricated the excuse that Plaintiff "failed to yield to a pedestrian," which was a lie.

55. Plaintiff wept as he told the individual defendants, "You're making a huge mistake. Why are you doing this?" to which Plaintiff was told to "shut the fuck up."

56. At the Precinct, Plaintiff was booked and processed, fingerprinted and photographed, searched, and detained in a holding cell.

57. The individual defendants continued questioning Plaintiff about drugs, weapons, and the "pack of money."

58. To justify their treatment of Plaintiff, the individual defendants concocted a false narrative about their observations of the Plaintiff and his friends, fabricating reasons for stopping the Audi.

59. When Plaintiff's mother came to the Precinct, the individual defendants told her that they had observed Plaintiff and his friends "smoking weed in the car" in the Audi.

60. After a few hours in the Precinct, Plaintiff was taken to another location in Harlem, where he was detained for several hours.

61. In the early morning hours, Plaintiff was taken to Central Booking in lower Manhattan, where he remained until the evening of January 15, 2015.

62. On the evening of January 15, 2015, Plaintiff was arraigned and released on his own recognizance by the New York County Criminal Court Judge.

63. In the case of <u>People of the State of New York against Jonathan Flores-Snyder</u>, Docket 2015NY003298, Plaintiff was charged with Criminal Possession of a Weapon in the Fourth Degree, under New York State Penal Law Section 265.01(1).

64. In the Criminal Court Complaint, PO Frey claimed: "I took a gravity knife from the defendant's left front pants pocket. I know that the knife is in fact a gravity knife based on my training and experiences as a police officer and because I was able to open the knife using centrifugal force. When I held the knife and flicked my wrist, the blade swung open and locked into place automatically."

65. Plaintiff was released on his own recognizance but ordered to return to Criminal Court on February 18, 2015 for Trial.

66. On February 24, 2015, because Plaintiff wanted to resolve his case in a safe way that would not give him a criminal record or involve jail time, he pled guilty to the violation of Disorderly Conduct, under Penal Law Section 240.20, with a sentence of two days community service.

67. Because of the excessive tightness of the handcuffs, Plaintiff suffered pain in his wrists and bruises that lasted around two weeks.

68. Because of the rough way in which Plaintiff was dragged and shoved and kicked into the police cruiser, Plaintiff had bruises and soreness around his leg.

69. The NYPD failed to supervise and discipline the individual defendants despite their histories of malicious and mendacious behavior, ignoring the risk that they would engage in future misconduct, thereby encouraging them to continue to abuse their powers and violate the rights of civilians.

70. Proportionate and appropriate discipline sends a message to NYPD officers that they are not above the law and are accountable to the people whom they serve. Inadequate discipline creates a culture where officers abuse their power.

71. Police officers in upper Manhattan are trained to proactively and over-aggressively investigate crime by using traffic stops as a pretext to investigate criminal activity.

72. As a direct and proximate cause of the said acts of the Defendants, Plaintiff suffered the following injuries and damages:

   a. Violation of his constitutional rights under the Fourth Amendment to the United States Constitution;
   b. Physical pain;
   c. Severe emotional trauma, distress, degradation, and suffering.

## SECTION 1983 CLAIMS

### FIRST CLAIM

**Deprivation of Federal Civil Rights Under Section 1983**

73. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

74. All of the aforementioned acts of Defendants, their agents, servants and employees, were carried out under the color of state law.

75. All of the aforementioned acts deprived Plaintiff of the rights guaranteed to citizens of the United States by the Fourth Amendment to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

76. The individual defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth Amendment of the United States Constitution.

77. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## SECOND CLAIM

### Illegal Seizure Under Section 1983

78. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

79. By the actions described above, Defendants deprived Plaintiff of his federal civil rights, including his Fourth Amendment right to be secure in his person against unreasonable seizures.

80. As detailed above, the individual defendants intentionally stopped, questioned, and detained Plaintiff without reasonable suspicion, and without privilege or consent.

81. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

### THIRD CLAIM

**Illegal Search Under Section 1983**

82. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

83. By the actions described, the Defendants deprived Plaintiff of his Fourth Amendment right to be free of unreasonable or unwarranted restraints on personal liberty, specifically his right to be free from unlawful searches.

84. Without probable cause, a warrant, or consent, the individual defendants searched Plaintiff's person and vehicle, where Plaintiff had a reasonable expectation privacy.

85. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

### FOURTH CLAIM

**Excessive Force Under Section 1983**

86. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

87. By the actions described, the individual defendants deprived Plaintiff of his Fourth Amendment right to be free of unreasonable or unwarranted restraints

on personal liberty, specifically his right to be free from excessive and unreasonable force.

88. As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

## FIFTH CLAIM

### Failure to Intervene Under Section 1983

89. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

90. Each and every individual defendant had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of his constitutional rights by other law enforcement officers.

91. The individual defendants failed to intervene on Plaintiff's behalf to prevent, end, or truthfully report the violations of his constitutional rights despite knowing about such violations and having had a realistic opportunity to do so.

92. As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged .

## SIXTH CLAIM

### Municipal Liability Under Section 1983

93. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

94. By the actions described, the Defendant City deprived Plaintiff of his Fourth Amendment right to be free of unreasonable searches and seizures through its failure to train, supervise, and discipline rogue officers; and through its fostering a culture of abuse and over-aggressive investigation tactics in the context of traffic stops.

95. As a direct and proximate result of the acts of Defendant City, Plaintiff sustained the other damages and injuries hereinbefore alleged.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands the following relief jointly and severally against the Defendants:

    a.    An order awarding compensatory damages for Plaintiff Jonathan Flores-Snyder in an amount to be determined at trial;

    b.    An order awarding punitive damages in an amount to be determined at trial;

    c.    A court order, pursuant to 42 U.S.C. § 1988, that Plaintiff is entitled to reasonable attorney's fees, costs and disbursements; and

    d.    Such other and further relief as this Court may deem appropriate.

DATED:    August 20, 2016                     _____s/_____
                New York, New York          CYRUS JOUBIN, ESQ.
                                                                    43 West 43rd Street, Suite 119
                                                                    New York, NY 10036
                                                                    (703) 851-2467
                                                                    joubinlaw@gmail.com
                                                                    Attorney for Jonathan Flores-Snyder